MuRdock and Raum, JJ., dissenting: The average base period net income, as computed under section 713 (f), is almost $400,000 greater than the actual average base period net income. It is not clear from the prevailing opinion just what is being pushed back under the push-back rule or just what effect pushing back the increased, authority of Luckman would have. The net sales, after being fairly constant from 1934 through 1938, went down in 1939 and they continued to go down in 1940, despite the enhanced importance of Luckman in management. The net sales of this petitioner did not vary greatly from year to year over a long period except for the years 1930 through 1933, when the Amos ’n’ Andy show was at its peak, and then began to increase in 1941. The reasons for the post-1939 changes are not at all clear, if they can be considered. For aught we know, the increased amount of sales may have been attributable in most part to increased unit prices obtained in the early war years rather than to any increase in quantity of merchandise sold. The petitioner ceased to sponsor Amos ’n’ Andy in December 1937. The expenditures for “Advertising, Radio, Space, etc.” dropped about $700,000 in 1938 from what they had been in 1937, and the drop in total expenses was over $900,000. The net earnings for 1938 exceeded those for 1937 by over $500,000. The large drop in 1938 expenses might well account for the increased earnings for that year over those for the 2 previous years. What, if anything, Luckman had to do with the termination of the Amos ’n’ Andy contract, is not disclosed in the findings. The earnings dropped in 1939 and 1940, despite the fact that Luckman’s importance in management had been increasing since 1936. In order to prevail here, the petitioner must show that upon a 2-year push back of the appropriate events — whatever they may be — it would have attained, by the end of the base period, a level of earnings that would call not only for a constructive average base period net income in excess of its actual average base period net income but also in excess of the average base period net income computed with the benefits of section 713 (f). Acme Breweries, 15 T. C. 682; Midvale Co., 19 T. C. 1216. The petitioner’s actual average base period net income was $138,065.33. The benefits conferred by section 713 (f) artificially raise that figure to $526,271.89. The burden of proof is upon the petitioner, and nothing set forth in the majority Opinion indicates a showing by the petitioner that if Luckman had appeared on the scene 2 years earlier, its earnings picture would have improved so remarkably as to surpass the $526,271.89 average computed under section 713 .(f). In the face of a pattern of declining earnings immediately after 1938, not satisfactorily explained, it seems clear that the petitioner has not carried its burden. ISTo amount of sterile mathematical computations can effectively supply the answer to the blunt question: Would the petitioner’s earnings'in fact have increased to such a level that its recomputed base period net income would have risen not only beyond its actual average of $138,065.33, but also beyond $526,271.89? Nothing set forth in the majority Opinion gives confidence that the petitioner has presented facts justifying an affirmative answer to that question.